**KENT SAMOA INC., dba KENT RENTAL & EQUIPMENT LEASING, Plaintiff**

v.

**FINA L. SHIMASAKI, Defendant**

High Court of American Samoa
Trial Division

CA No. 125-94

October 4, 1995

Before RICHMOND, Associate Justice, VAIVAO, Associate Judge, and AFUOLA, Associate Judge.

Counsel: For Plaintiff, Katopau Ainu'u
 For Defendant, Barry I. Rose

Opinion and Order:

## PROCEDURAL HISTORY

Plaintiff Kent Samoa, Inc., dba Kent Rental & Equipment Leasing ("Kent") filed this action against defendant Fina L. Shimasaki ("Shimasaki") seeking reimbursement for substantial repairs to a vehicle rented by Kent to Shimasaki and two other vehicles, loss of income while the rental vehicle was under repair, and punitive damages arising out of a multi-vehicle accident.

Kent moved for summary judgment, arguing that since the rental agreement imposed absolute liability, no issues of fact were triable. On March 2, 1995, we denied this motion, holding that whether or not $1,000 already paid by Shimasaki to Kent constituted an accord and satisfaction was a genuine issue of fact. Trial was held on August 25, 1995, with Shimasaki and counsel for both parties present.

## FACTS

On February 14, 1992, Shimasaki rented an automobile from plaintiff Kent, listing herself as the driver. On February 18, 1992, Shimasaki's son, Andy Tafua ("Tafua"), drove the rental vehicle and was involved in an accident resulting in damage to the rental vehicle and four other vehicles. Tafua was then under the age of 21 years and had no driver's license.

The rental agreement required that the vehicle be operated only by duly licensed drivers over the age of 21. The rental agreement also provided the option for the renter to purchase insurance for the vehicle and purported to make the renter absolutely liable otherwise for damage to the vehicle, "regardless of negligence." Shimasaki did not exercise the insurance option, but also did not initial the box on the agreement taking "FULL RESPONSIBILITY . . . REGARDLESS OF NEGLIGENCE."

A short time after the accident, Shimasaki received a telephone call from a representative of Kent, who informed her that she was required to pay a $1,000 insurance deductible to relieve herself from liability. Shimasaki met with the representative at Kent's offices and, after the representative assured her that $1,000 was all she would have to pay, paid that amount. In due course, the insurance company refused to pay for the accident based on the fact that Tafua was underage and unlicensed.

Kent paid for repairs to the rental vehicle and settled the claims of four other motorists in the accident with its own funds. The fifth motorist was covered by collision insurance. Kent then filed this action with respect to rental vehicle and two other vehicles which were extensively damaged.

## DISCUSSION

Kent denies the theory that the $1,000 paid by Shimasaki was an accord and satisfaction, claiming that its agent had no authority to settle claims on Kent's behalf, that $1,000 was never represented as fully satisfying the debt, and that $1,000 is a standard initial charge whenever an accident occurs, rather than an insurance deductible. Shimasaki argues, in response, that she was told more than once that a $1,000 payment would discharge her liability to the company, that she never gave Kent authority to negotiate or settle third-party claims on her behalf, and that the absence of any evidence of fault in the accident clears her of any further liability.

### 1. Authority to Settle and Requirement of Fault

The rental agreement states, in relevant part:

> Renter is responsible for and will reimburse KENT upon demand for all loss or damage whatsoever (regardless of negligence) to Vehicle and other equipment, but specified on the reverse side of this Agreement, per occurrence, unless vehicle was used, operated or driven in violation of any provision of this Agreement.[1]

---

[1] This provision is so poorly written, convoluted and difficult to read that attorneys (let alone the average person renting a vehicle) would have a difficult time understanding it. This creates an inherent problem for Kent in demonstrating that there was any meeting of the minds regarding this clause. In the present case there are other bases for our decision, but we find it useful to point out that provisions of a form contract may be

46

The foregoing language assigns the risk of damage to the "Vehicle and other equipment" to the renter, in this case Shimasaki, without regard to fault. This point alone, however, does not end the argument. Assuming for the sake of discussion that the term "other equipment" includes other vehicles in the accident (an improbable assumption), a strict interpretation of the agreement might provide Kent with authority to settle claims for any amount it desires and summarily bind the renter to "reimburse Kent upon demand" regardless of how outrageous the settlement, and regardless of fault.

■ We are guided in our interpretation of the agreement by two principles. First, ambiguous terms in a form contract will be construed "most strongly against the plaintiff who framed and prepared" them. *New Prague Flouring Mill v. Spears*, 189 N.W. 815, 821 (Iowa 1922). Second, a strong presumption prevails against construction of contract terms in a way that permits one party to exercise unbridled discretion to the detriment of the other. *Id.* at 822. Accordingly, we hold that the term "other equipment" does not refer to other vehicles which may be involved in accidents with Kent's vehicles.

It is easily understood that an automobile rental company may well demand that the renter bear the risk of damage to the rental vehicle, even where the accident is the fault of a third party. Any time a rental vehicle is driven, there is a real risk that a third party may damage it and an innocent party may end up bearing the cost. A rental car company can reasonably protect itself against the loss or damage of its vehicle due to a third party's negligence by assigning the risk of such loss or damage to the renter.

■ However, Kent's attempt to reserve the authority to settle non-adjudicated claims of third parties at the renter's expense is a different matter. In this case, no language in the agreement purports to provide this authority. Kent can only claim such authority on the basis that Kent is vicariously liable and may be directly sued by the drivers of other vehicles in an accident. A vehicle owner is vicariously liable for accidents caused by the negligence of others driving the vehicle with permission, but has a right to indemnity from the principal tortfeasor when forced to pay damages. *Vaiti v. Tuiolemotu*, 19 A.S.R.2d 71, 74 (Trial Div. 1991).

■ The owner of a rental vehicle is vicariously liable as long as the offending driver operates the vehicle with the rental company's "express

voidable solely on the basis of incoherence. JOHN D. CALAMARI & JOSEPH M. PERILLO, CONTRACTS § 9-44 (2d ed. 1977).

or implied permission." *Foma'i v. Samana*, 4 A.S.R.2d 102, 106-07 (Trial Div. 1987). Statutory law requires the owner of a vehicle to maintain liability coverage on a vehicle for all potential drivers who use "the vehicle or vehicles with the express or implied permission of the named insured." A.S.C.A. § 22.2003. If Tafua drove the rental vehicle with Kent's express or implied permission, Kent is vicariously liable and was legally required to carry insurance covering Tafua's accident. If this were the case, Shimasaki's payment of the $1,000 deductible should have been sufficient to cover Kent's liability to third parties.[2] If, however, Tafua drove without Kent's express or implied permission, Kent was not vicariously liable for the accident and had no business settling or paying claims against Shimasaki.

■ Regardless of whether Tafua had express or implied permission to drive, he must be at fault in the accident to be considered the principal tortfeasor, causing vicarious liability to attach to the vehicle's owner, and for the owner to consequently have a right of indemnity against the driver. *Vaiti v. Tuiolemotu*, 19 A.S.R.2d 71, 74 (Trial Div. 1991). We will not consider Kent's settlement with the other drivers as conclusive proof that Tafua was at fault in the accident. Settlement is not an admission of fault. Litigants often settle for a variety of reasons unrelated to who was legally at fault. Furthermore, it would be unfair for Kent to admit Tafua's fault for settlement purposes, and then to sue his mother for indemnity based on that admission. Aside from Kent's settlement with the other drivers, we have no evidence tending to prove that Tafua was at fault in the accident.

With respect to damage sustained by the rental vehicle, evidence of fault is immaterial, because the rental agreement assigns the risk of damage by third parties to the innocent renter. Nothing in the rental agreement, however, can or should be construed to require the renter to indemnify Kent against the third parties' claims, where the renter is not shown to be at fault in the accident. For the foregoing reasons, we hold that Kent has not established any right to indemnification against the third parties' claims. Kent was clearly entitled only to compensation for the damage to its vehicle.

The remaining question, therefore, is whether or not Shimasaki's payment of $1,000 satisfied this obligation as an accord and satisfaction.

### 2. *Accord and Satisfaction*

---

[2] This argument is not intended to deny the principle that the vehicle owner may collect indemnity from the negligent driver for any damages resulting from the accident without regard to insurance. *Vaiti v. Tuiolemotu*, 19 A.S.R. 2d 71, 74 (Trial Div. 1991)

Despite Kent's assertion that $1,000 is a standard initial charge for every person renting a vehicle damaged in an accident, other testimony at trial and a notation on the receipt for payment convince us that the two·parties shared the understanding that the payment was an insurance deductible. We further find that during their meeting, Kent's representative advised Shimasaki that after the $1,000 remittance Shimasaki would not be required to make any additional payment, because insurance would cover the remainder of the damage.

The issue before us is whether the foregoing factual findings support Shimasaki's contention that the $1,000 payment discharged her liability by accord and satisfaction.

### A. Authority to Settle

■ Kent's primary argument is that its representative lacked authority under company policy to settle claims. Textbook agency law, however, is that an agent, to whom the principal gives the appearance of authority, may bind the principal regardless of whether actual authority exists. WARREN A. SEAVEY, AGENCY § 8D. As important public policy, a principal is prevented from hiding behind internal company policy when unsuspecting consumers detrimentally rely upon the representations of one cloaked with the principal's authority. In the present case, we are satisfied that Kent's agent was cloaked with Kent's authority, and Kent will, therefore, not derive protection from any internal company policy that denied the agent the power to settle claims.

### B. Payment of $1,000

With respect to our holding that the parties mutually understood Shimasaki's payment of $1,000 to be an insurance deductible, we take important note that this amount was charged under Kent's mistaken impression that the accident would be covered by the company's insurance policy. In our order denying Kent's motion for summary judgment, we indicated our disfavor of the old common law rule that an accord and satisfaction may not result from partial payment of a liquidated amount.

■ The present dispute, however, does not result from a direct agreement to accept a partial payment in full satisfaction, but rather from the mistaken assumption that insurance would cover the remainder of the damages. If a genuine mistake results in an erroneous calculation of damages, such mistake provides an escape from an otherwise binding accord. ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 1292; *Charlie*

*Thomas Courtesy Ford v. Sid Murray Agency*, 517 S.W.2d 869, 874 (Tex. App. 1975); *Rhea v. Smith*, 462 S.W.2d 78, 80 (Tex. App. 1970).

■ The foregoing analysis is arguably applicable, since Kent's agreement to accept $1,000 in full satisfaction of Shimasaki's liability did not result from a genuine dispute about the amount of damages, but rather from a mistake of fact regarding the extent of insurance coverage that would be provided. On the other hand, when a claim against an insurer depends upon facts known to be doubtful, a settlement of the claim is not voidable when the doubtful facts turn out to be incorrect. *New York Life v. Chittenden & Eastmen*, 112 N.W. 96, 99 (Iowa 1907); *Sears v. Grand Lodge A.O.U.W. of New York*, 57 N.E. 618 (N.Y. 1900).

In the present case, Kent's agent testified at trial that she knew Tafua was underage and lacked a driver's license before she accepted the $1,000 deductible. Since the agent executed the rental agreement, we further find that the she was aware that Shimasaki had not initialed the insurance option on the contract. Additionally, page 1 of the agreement states:

> WARNING: Notwithstanding payment of collision waiver, if Vehicle is used in violation of any provision of this agreement . . . Renter shall be liable for all damages, as provided on the reverse side.

The foregoing facts indicate that it was doubtful whether Tafua's accident would be covered by the insurance policy. Knowing the doubtful nature of the insurance claim, Kent's agent accepted the $1,000 deductible from Shimasaki, representing that she would not be required to pay any additional money.

In an analogous Pennsylvania case, an insurance company was not absolved of its promise to cover the accident after payment of a negotiated sum of money, even though the liability insurance agreement was ultimately adjudicated voidable. *See Rivers v. Delaware Valley Mutual Casualty*, 175 A.2d 87, 89-90 (Penn. 1961). In the present case, although the insurance agreement ultimately provided no legal protection to Shimasaki, Kent's agent represented to Shimasaki that a $1,000 payment would relieve Shimasaki of liability. Thus, we hold that Kent's acceptance of $1,000 from Shimasaki was an accord and satisfaction for the entire sum of damages.

## CONCLUSIONS

Kent's rental contract imposed liability on the renter, Shimasaki, for all damages to the rental vehicle, regardless of negligence. The agreement did not impose absolute liability upon Shimasaki with regard to other

vehicles. Kent's right to indemnity against the third parties' claims is contingent upon proof that the driver of the rental car, Tafua, was negligent and, therefore, primarily liable in the accident. Without proof of Tafua's fault, Kent has failed to make a prima facia case for indemnification against the third-party claims.

Shimasaki's liability for damages to Kent's vehicle is discharged by the $1,000 payment, because Kent's agent represented that Shimasaki would not be required to make any additional payment, despite understanding that the insurance claim was doubtful. Shimasaki relied on this representation in making the payment. Although the agent was not given actual authority to settle claims on Kent's behalf, the agent had apparent authority, which was sufficient to bind Kent as her principal.

For these reasons, we deny Kent's claim for indemnification by Shimasaki, or any other recovery against her.

It is so ordered.